# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hollis J. Larson, | Case No. 13-cv-1074 (JRT/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| [T]he Minnesota Sex Offender Program (MSOP); Lucinda Jesson; Cal Ludeman; Dennis Benson; Erik Skon; Greg Carlson; Scott Benoit; David Prescott; Tim Gorr; David Bornus; Shelby Richardson; Janine Herbert; Lou Stender; Nancy Johnston; Terry Kneisel; Barry Anderson; Marnie Dollinger; Gary Grimm; Leslie Barfknecht; Jim Lind; Steve Sajdak; Susan Johnson; Laurie Severson; David Paulson; Ralph Schmidt; Scott Sutton; Ann Linkert; Phil Wilder; Kevin Moser; Elizabeth Barbo; Tom Lundquist; Ann Zimmerman; Debbie Thao; Marie Skalko; Teresa Knies; Tara Osborne; Julianna Beavens; Yvette Anderson; Joanne Christenson; Jon Hibbard; Blake Carey; Thane Murphy; David Ferrian; Anita Moonen; Julie Rose; John and Jane Does; and Dan Storkamp, | |
| Defendants. | |

## INTRODUCTION

Over a decade ago, Plaintiff Hollis J. Larson filed this lawsuit challenging the legality of conditions at the Minnesota Sex Offender Program ("MSOP") (ECF No. 1). The Court stayed his lawsuit during the pendency of a related class action lawsuit, *Karsjens v. Minnesota Department of Human Services*, No. 11-CV-3659 (DWF/TNL) ("*Karsjens*"). The Court lifted the stay on October 3, 2022, after the *Karsjens* court entered final judgment. (ECF No. 24.) Shortly thereafter,

Mr. Larson filed an Amended Complaint (ECF No. 30). The Court reviewed his Amended Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), concluded that he had alleged a colorable basis for relief, and directed the U.S. Marshals Service to effect service on Defendants in their personal and professional capacities. (ECF No. 32.) Due to the passage of time, certain Defendants could not be located or served and therefore did not respond to Mr. Larson's Amended Complaint.[1] (*See* ECF Nos. 82, 84, 86, 109.)

The remaining Defendants moved to dismiss Mr. Larson's Amended Complaint (ECF No. 91). In response, Mr. Larson filed a self-styled opposition and motion for continuance and default judgment (ECF No. 97). For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss be granted, Mr. Larson's self-styled motion be denied as moot, and this matter be dismissed in its entirety.[2]

## BACKGROUND

### I.    Mr. Larson's Amended Complaint

Mr. Larson is involuntarily committed to the MSOP pursuant to Minnesota Statutes Chapter 253B, the Minnesota Commitment and Treatment Act (the "MCTA"). Mr. Larson's Amended Complaint is 52 pages long and names 47 Defendants plus "an unknown number of John

---

[1] These Defendants include former employees of the MSOP: Greg Carlson, David Prescott, Shelby Richardson, Barry Anderson, Marnie Dollinger, Gary Grimm, Leslie Barfknecht, Jim Lind, Ralph Schmidt, Yvette Anderson, and Jon Hibbard.

On June 15, 2023, Mr. Larson filed a self-styled Objection Regarding Failure of Service, asking the Court to order the U.S. Marshals to reattempt service and to not dismiss his claims against any Defendant for failure to prosecute or comply with procedural rules (ECF No. 110). As discussed below, the Court recommends that Mr. Larson's Amended Complaint be dismissed in its entirety with prejudice. Mr. Larson's claims fail on the merits for the same reasons as to all Defendants, whether or not they were served.

[2] The Undersigned considers the motions pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

Does and Jane Does," all in both their individual and official capacities. (ECF No. 30.) Mr. Larson alleges that each Defendant is a current or past employee of the MSOP. (*Id.* at 3-14 ¶¶ B, 1-47.) Mr. Larson's Amended Complaint uses a scattershot approach, asserting numerous broad allegations regarding the conditions and practices at the MSOP, interspersed with certain allegations specific to Mr. Larson. (*See generally* ECF No. 30.)

The crux of Mr. Larson's Amended Complaint appears to be his allegation that Defendants and others at the MSOP "have an ongoing plan, program, practice, and policy whereby MSOP detainees, such as plaintiff, who protest, orally, in writing, or in any form, any aspect of their detention and/or who do not 'participate' in 'treatment' are labeled as 'troublemakers'" and are subjected to disciplinary actions such as placement in the High Security Area ("HSA") or the Behavioral Therapy Unit ("BTU-Omega), or placement on an Individual Program Plan ("IPP") or Administrative Restriction Status ("AR"). (*Id.* at 14-15 ¶ 2.) Mr. Larson alleges these practices constitute punishment, contravene the MSOP's written policies and Defendants' duties and violate his constitutional protections. (*See e.g., id.* at 15-52 ¶¶ 3-167.) Mr. Larson also alleges generally that he has been subjected to each of these disciplinary measures at various points in time. (*Id.* at 19 ¶ 23 (BTU); 21 ¶ 32 (HSA); 22 ¶ 35 ( IPP); 23 ¶ 38 (alleging repeated and likely future discipline via BTU, HSA, IPP, and AR).)

In addition to Mr. Larson's general allegation that he has been "routinely punished" (*see, e.g.*, *id.* at 25 ¶ 52), he also asserts allegations regarding a specific incident that allegedly occurred on July 20, 2011, when Mr. Larson, "due to his documented mental illnesses and under extreme stress and duress … attempted to voluntarily enter the High Security Area (HSA), MSOP's punitive segregation unit, to isolate himself from the constant torture that is MSOP's only 'treatment.'" (*Id.* at 27 ¶ 62.) Mr. Larson alleges his attempt to enter the HSA came after MSOP

officials "moved [him] off of MSOP's Mental Health Unit into a two man per cell unit" in retaliation for his failure to participate in sex offender treatment. (*Id.*) He alleges when he attempted to enter the HSA, Defendants Jon Hibbard and Joanne Christenson confronted him and that "[w]ithout need, provocation, or justification," Defendant Hibbard assaulted him by putting him in a "'bear hug' with his arms pinned at his sides and then proceeded to throw [him] to the floor, first with [him] on top of defendant Hibbard (for approximately 5 seconds), then with defendant Hibbard (who weighs approximately 280 pounds) on top of [him]." (*Id.* at 27-28 ¶¶ 63, 65.) Mr. Larson alleges he "tried to extricate himself, by thrashing around, from defendant Hibbard's hold," and that his "head *may* have inadvertently come into contact with defendant Hibbard's head." (*Id.* at 28 ¶¶ 70-71 (emphasis in original).) Mr. Larson alleges Defendants Hibbard, Christenson, and unknown John and Jane Does then held him down to handcuff him, causing him to suffer injuries and "gratuitous" pain in the process. (*Id.* at 28-29 ¶¶ 72-78.) He contends the handcuffing and use of force was "totally unnecessary and illegal," and "not approved in writing by the head of the treatment facility or medical staff." (*Id.* at 29 ¶ 79.) Mr. Larson alleges sometime later that day, Defendant David Ferrian, a Licensed Practical Nurse, examined and documented his injuries, but neither Mr. Ferrian nor any other Defendants provided any other treatment. (*See id.* at 13 ¶ 42; *id.* at 29 ¶¶ 80-82.)

Mr. Larson further alleges that sometime after the event on July 20, 2011, Defendants "conspired to maliciously punish [him]" by finding him "'guilty' of disorderly conduct, staff assault, etc., and decided to inflict punishment by placing [him] in HSA for allegedly disorderly conduct, staff assault, etc." (*Id.* at 30 ¶ 85.) Mr. Larson asserts Defendants held him in HSA from July 20, 2011 through July 27, 2011 and refused to give him meals, a drinking cup, bedding, showers, or a change of clothing. (*Id.* at 30 ¶¶ 87-88.) Mr. Larson alleges on July 22, 2011,

Defendants Terry Kneisel, Susan Johnson, and Laurie Severson "conducted an Administrative Restriction Status Panel in which they determined [he] would be eligible for release from HSA on July 25, 2011," (*id.* at 34 ¶ 109), but "[Mr. Larson] did not agree to leave HSA until July 27, 2011" (*id.* at 34 ¶ 110). Mr. Larson additionally asserts Defendant Thane Murphy and "unknown John and Jane Does … fraudulently, libelously, and defamatorily claimed that [he] committed the crime of assault against defendant Hibbard and attempted to file those false criminal charges against [him]," and further claims MSOP employees "routinely generate false criminal charges against MSOP detainees." (*Id.* at 30 ¶¶ 89, 90.) Mr. Larson alleges after he left HSA, Defendants Theresa Knies, Tara Osborne, Elizabeth Barbo, Terry Kneisel, Susan Johnson, Laurie Severson, and unknown John Does and Jane Does improperly kept him on AR status "for punishment and as retaliation against him." (*Id.* at 34 ¶ 113.)

Mr. Larson acknowledges the MSOP has processes and policies for appealing his AR status. (*Id.* at 35 ¶¶ 117-120.) He alleges he made multiple attempts to have his AR status reviewed and reduced, but MSOP officials reviewed his appeals and "determined AR was still warranted" because a criminal investigation was pending, which continued for a period of two months. (*Id.* at 35-37 ¶¶ 121-135.) Mr. Larson alleges Defendants Lucinda Jesson, Dennis Benson, Terry Kneisel, and Thane Murphy terminated his AR status on September 8, 2011 upon completion of the criminal investigation, in which he was not charged (*id.* at 38 ¶ 141), and that the fact he was not charged with any crime proves Defendants "falsely imprison[ed] and tortur[ed]" him for the time he spent on AR status "for absolutely no legitimate reason" (*id.* at 38 ¶ 142).

Other than the events in July 2011 and resulting disciplinary actions, Mr. Larson's allegations largely are not specific to his personal experience at the MSOP; rather, he alleges grievances with respect to the MSOP's general practices and its treatment of clients as a whole.

(*See, e.g.*, *id.* at 18 ¶¶ 20-22, 24; *id.* at 21 ¶¶ 33-36; *id.* at 24 ¶¶ 45-48; *id.* at 30 ¶¶ 90-93; *id.* at 39 ¶ 149; *id.* at 40 ¶ 152; *id.* at 42 ¶ 167.)   For example, Mr. Laron alleges Defendants have "establish[e]d prison-like policies that compromise detainee morale, satisfaction, and care." (*Id.* at 18 ¶ 20.)  He also makes allegations regarding the MSOP's mail policies (*id.* at 18 ¶ 21), and polices for conducting "Unclothed Visual Body Searches," which Mr. Larson claims are "nothing less than a sexual assault" (*id.* at 20 ¶ 25).  Mr. Larson also generally alleges that: (1) "MSOP employees follow an unwritten policy of arbitrarily enforcing capriciously and whimsically made up 'policies' and 'rules'" (*id.* at 31 ¶ 91); (2) "It is an adjudicated fact that the conditions of confinement at MSOP are unconstitutional" (*id.* at 42 ¶ 167); (3) the MSOP "is not licensed, qualified, or equipped to provide *any* mental health treatment" (*id.* at 24 ¶ 46 (emphasis in original)); (4) "some or all of the defendant MSOP employees have engaged in using excessive force/misusing force, in their official and individual capacities, against MSOP detainees in the past" (*id.* at 39 ¶ 149); and (5) all Defendants "were previously informed of MSOP employees' abusive conduct, not only by [Mr. Larson], but by virtually every MSOP detainee that has ever been placed in HSA" (*id.* at 40 ¶ 150).

Mr. Larson asserts ten causes of action ("COA").  Most of these assert violations of 28 U.S.C. § 1983 under the United States Constitution.  He also asserts state law claims under parallel provisions of the Minnesota Constitution, the MCTA and Minnesota common law.  The COAs are as follows:

**First COA** - Unreasonable Searches and Seizures (*id.* at 43 ¶¶ 169-172);

**Second COA** - Invasion of Privacy (*id.* at 43 ¶¶ 173-176);

**Third COA** - Overly Restrictive Conditions (*id.* at 44 ¶¶ 177-180);

**Fourth COA** - Cruel and Unusual Punishment (*id.* at 44 ¶¶ 181-184);

**Fifth COA** - Failure to Provide Adequate and Courteous Treatment/Failure to Train (*id.* at 45 ¶¶ 185-188);

**Sixth COA** - Denial of Treatment for Serious Medical Need (*id.* ¶¶ 189-192);

**Seventh COA** - Negligent Retention (*id.* at 46 ¶¶ 193-197);

**Eighth COA** - Negligent Supervision (*id.* at 46 ¶¶ 198-200);

**Ninth COA** - Outrage (*id.* at 47 ¶¶ 201-203); and

**Tenth COA** - Supplemental State Torts (*id*. at 47 ¶¶ 204-207) (including the following Minnesota common law claims: malicious prosecution; defamation; misrepresentation; abuse of process; false imprisonment; professional negligence; negligence per se; intentional, reckless, and negligent infliction of emotional distress; assault; battery; and fraud).

Mr. Larson asserts his Seventh and Eighth COAs—negligent retention and supervision— against "DHS/MSOP, in their official and/or individual capacities." (*Id.* at 46 ¶¶ 194, 199.) He asserts his remaining COAs against "the defendants named in [Section] III.2 and all John Does and Jane Does, in their official and/or individual capacities." (*Id.* at 43-47 ¶¶ 170, 174, 178, 182, 186, 190, 202, 205). In Section III.2, Mr. Larson names twenty-six individual Defendants, as well as "all MSOP administrators and or supervisors of some sort, and unknown John Does and Jane Does."[3] This list excludes twenty-one other Defendants Mr. Larson names in the case caption and identifies in the Section II of his Amended Complaint. (*See id*. at 1, 3-14 ¶¶ 1-47.) For each COA, Mr. Larson: (1) realleges all 168 paragraphs of allegations in the body of his Amended Complaint

---

[3]  The named Defendants include: Lucinda Jesson, Dennis Benson, Dan Storkmap, Greg Carlson, Janine Hebert, Ralph Schmidt, David Bornus, Shelby Richardson, David Paulson, Scott Sutton, Ann Linkert, Phil Wilder, Kevin Moser, Elizabeth Barbo, Tom Lundquist, Susan Johnson, Terry Kneisel, Ann Zimmerman, Laurie Severson, Debbie Thao, Marie Skalko, Steve Sajdak, Teresa Knies, Tara Osborne, Julianna Beavens, and Yvette Anderson. (ECF No. 30 at 14 ¶ 2.) This list excludes 21 other Defendants named in the case caption and identified in the Section II of the Amended complaint. (*See id*. at 1, 3.)

without linking any specific allegation to any particular COA (*see id.* at 43-47 ¶¶ 169, 173, 177, 181, 185, 189, 202); and (2) states that "the actions of the defendants named in III.2 and all John and Jane does, in their official and/or individual capacities, as alleged herein constitute [the cause of action]." (*Id.* at 43-47 ¶¶ 170, 174, 178, 182, 186, 190, 202, 205.) No COA specifically relates to or even mentions the events that allegedly occurred in July 2011.

For relief, Plaintiff seeks: (1) compensatory and punitive damages against Defendants in their individual capacities; (2) preliminary and injunctive relief against official and individual-capacity defendants; and (3) declaratory relief as to "the constitutional rights to which plaintiff is entitled while confined at MSOP." (*Id.* at 49-51.)

Defendants argue Mr. Larson's Amended Complaint should be dismissed because his COAs are barred by claim and issue preclusion. (ECF No. 93 at 11-16.) They further argue the Court should dismiss Mr. Larson's Amended Complaint in its entirely because his pleading is insufficient and his COAs fail to state a claim. (*Id.* at 16-18, 24-31.) Defendants also urge the Court to decline to exercise supplemental jurisdiction over Mr. Larson's state-law claims, arguing these claims should be dismissed in any event for failure to state a claim or lack of jurisdiction. (*Id.* at 31-32.) Next, Defendants contend Mr. Larson's individual-capacity claims should be dismissed because he either fails to allege any individual defendant's specific involvement in the underlying factual allegations or alleges involvement that does not establish an actionable deprivation of his rights. (*Id.* at 19-21.) Finally, Defendants argue Mr. Larson's individual-capacity damages claims should be dismissed under the doctrine of qualified immunity, and that he fails to state a claim for any form of injunctive relief. (*Id.* at 22-24.)

## II.    The *Karsjens* Litigation

In *Karsjens*, a class of plaintiffs represented by counsel, consisting of all clients who were then committed at the MSOP, including Mr. Larson, pursued numerous claims regarding the lawfulness of conditions at the MSOP.  *See Karsjens* (ECF Nos. 203, 635).  *Karsjens* was litigated for more than a decade and included three appeals.  *See Karsjens v. Piper*, 845 F.3d 394, 409 (8th Cir. 2017) ("*Karsjens I*"); *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021) ("*Karsjens II*"); *see also Karsjens* (ECF Nos. 1, 1036, 1118, 1200); *Karsjens v. Harpstead*, Civ. No. 22-1459, 2023 WL 4537942, at *7 (8th. Cir. July 13, 2023) ("*Karsjens III*").

The operative complaint in *Karsjens*, filed October 14, 2014, asserted the following thirteen claims: (I) Minnesota Statute § 253D is facially unconstitutional; (II) Minnesota Statute § 253D is unconstitutional as applied; (III) Defendants have failed to provide treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (IV) Defendants have failed to provide treatment in violation of the MCTA; (V) Defendants have denied Plaintiffs the right to be free from punishment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VI) Defendants have denied Plaintiffs the right to less restrictive alternative confinement in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VII) Defendants have denied Plaintiffs the right to be free from inhumane treatment in violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution; (VIII) Defendants have denied Plaintiffs the right to religion and religious freedom in violation of the First and Fourteenth Amendments to the United States Constitution; (IX) Defendants have unreasonably restricted free speech and free association in violation of the First Amendment to the United States Constitution and the Minnesota Constitution; (X) Defendants have conducted unreasonable

searches and seizures in violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution; (XI) Defendants have violated court ordered treatment; (XII) individual Defendants have breached Plaintiffs' contractual rights; and (XIII) individual Defendants have tortiously interfered with contractual rights and have intentionally violated Minn. Stat. § 253B.03, subd. 7. *Karsjens*, Third Am. Compl. (ECF No. 635) ("*Karsjens* TAC") ¶¶ 226- 352.

Central to the class claims in *Karsjens* were the plaintiffs' allegations that the defendants in that matter—consisting of the Commissioner of DHS and various MSOP employees (in their official capacities) including current Defendants Jesson, Carlson, Moser, Benson, Lundquist, Hebert, and Zimmerman—imposed policies and procedures that resulted in unconstitutional and illegal conditions of conferment. *See Karsjens* TAC ¶ 1. On plaintiffs' motion, the court dismissed with prejudice Counts IV, XI, XII, and XII on April 10, 2015. *Karsjens* (ECF No. 1005). In the first *Karsjens* appeal, the Eighth Circuit entered judgment in the defendants' favor on Counts I and II. *Karsjens I* at 409. On remand in August 2018, the district court dismissed Counts III, V, VI, and VII, and granted summary judgment in favor of defendants on the remaining claims, Counts VIII, IX, and X. *Karsjens v. Piper*, 336 F. Supp. 3d 974, 998 (D. Minn. August 23, 2018). In the second *Karsjens* appeal, the Eighth Circuit reversed the dismissal of Counts V, VI, and VII and remanded them for reconsideration under a different legal standard. *Karsjens II* at 1051. On remand in February 2022, the district court again dismissed with prejudice Counts V, VI, and VII. *Karsjens v. Harpstead*, Civ. No. 11-3659 (DWF/TNL), 2022 WL 542467, at *18 (D. Minn. Feb. 23, 2022). The Eighth Circuit affirmed the district court's decision on July 13, 2023. *Karsjens III* at *7. Among other things, the Eighth Circuit affirmed that the conditions of

confinement and the challenged MSOP policies and procedures were not unconstitutional or otherwise illegal. *Id.*

Mr. Larson filed his original complaint on May 6, 2013 (ECF No. 1), before any decision in *Karsjens*. He filed his Amended Complaint nearly a decade later, on November 10, 2022 (ECF No. 30), yet it is substantially similar to his original complaint, including the same COAs. (*Compare* ECF No. 1 ¶¶ 143-181 *with* ECF No. 30 ¶¶ 169- 207.)

## DISCUSSION

### A.    Legal Standard

#### 1.    Standard of Review Under Rule 12(B)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

#### 2.    Pleading Requirements

Rule 8(a)(2) requires that a complaint include "a short plain statement of the claim showing the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. Although pro se complaints must be construed liberally, such complaints still must allege sufficient facts to state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Rule 11(b) places additional requirements on pleadings filed both by "an attorney or unrepresented party." Fed. R. Civ. P. 11(b). Any party who files "a pleading, writing motion, or other paper … [with the Court] certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* at 11(b)(3).

Taken together, "[i]t is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Gurman v. Metro Hous. Dev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). For these reasons, "[t]his Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun'

complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Id.* at 1153 (collecting cases). Such complaints shift "onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* Most problematically for plaintiffs filing 'kitchen-sink' complaints, it becomes nearly impossible for the court to discern whether the plaintiff states a viable claim for relief because the allegations become "wreathed in a halo of frivolous and near-frivolous legal claims. The bad obscures the good." *Id.* at 1154.

### B.    Claim Preclusion

Defendants argue Mr. Larson's First through Fifth COAs are barred by claim preclusion, issue preclusion, or both, because they were litigated or arise under the same nucleus of facts, such that they could have been litigated in *Karsjens*. Mr. Larson responds that: (1) because his claims are specific to him; and (2) he requests damages against individual-capacity defendants rather than the injunctive and declaratory relief sought in *Karsjens*, his claims are not barred. (ECF No. 97 at 1-3.) He further contends that the *Karsjens* class certification order was "deficient," and that he unsuccessfully attempted to opt out of the class. (*Id.* at 2.) Finally, Mr. Larson argues his claims and issues are not barred because the Court did not dismiss them on preservice review under 28 U.S.C. § 1915(e)(2)(B). (*Id.* at 4.)

"Under federal common law, the doctrine of res judicata, or claim preclusion, applies when '(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.'"[4] *Elbert v. Carter*, 903 F.3d 779, 782

---

[4]    The Eighth Circuit sometimes asserts, as a fifth factor, that "the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect." *United States v. Bala*, 948 F.3d 948, 950 (8th Cir. 2020) (*quoting Rutherford v. Kessel*, 560 F.3d 874, 877 (8th Cir. 2009)). As a member of the plaintiff

(8th Cir. 2018) (quoting *Costner v. URS Consultants, Inc.,* 153 F.3d 667, 673 (8th Cir. 1998)).

"'[P]rivity' is 'merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within res judicata.'" *Elbert*, 903 F.3d at 782. At bottom, the question is whether the relationship of the privity parties is so close to the named parties that the complaint at issue is merely a repetition of the first cause of action. *Id.* (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972)). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based on the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). This determination is to be made "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Poe v. John Deere Co.*, 695 F.2d 1103, 1106 (8th Cir. 1982) (quoting Restatement (Second) of Judgments § 24(1) (1982)). "Under the doctrine of res judicata, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Elbert*, 153 F.3d at 673 (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added)).

The first three elements of claim preclusion are clearly satisfied here: (1) the court dismissed the claims raised in *Karsjens* with prejudice and on the merits;[5] (2) the *Karsjens* court

---

class in *Karsjens*, Mr. Larson has been litigating that matter for over a decade. His opportunity to litigate in that case has been more than sufficient to satisfy the "full and fair opportunity" factor, to the extent it applies.

[5] When Mr. Larson filed his response to Defendants' Motion to Dismiss, a third appeal was still pending in *Karsjens*. *See Karsjens v. Harpstead*, Civ. No. 11-3659 (DWF/TNL), 2022 WL 542467, at *18 (D. Minn. Feb. 23, 2022). Mr. Larson argued that, as a result, claim and issue preclusion did not apply because *Karsjens* had not yet resulted in a final judgment on the merits. (ECF No. 97 at 1.) On July 13, 2023, the Eighth Circuit affirmed the district court's decision to dismiss all remaining claims in *Karsjens*. *Karsjens III* at *7. And even if the *Karsjens* appeal was

was of competent jurisdiction; and (3) the Defendants named in Mr. Larson's lawsuit in their

official capacities are alleged to be agents of the same governmental entity as the defendants named

in *Karsjens*. *See Jamison v. Ludeman et al.*, 11-cv-2136-PAM-DTS, 2023 WL 2088302, at *2 (D.

Minn. Feb. 17, 2023) (finding these elements satisfied under the same circumstances presented

here); *Allan v. Jesson, et al.*, No. 11-cv-1611 (ADM/LIB) (D. Minn. Mar. 27, 2023) (same).

The Court also finds the fourth element is satisfied because the *Karsjens* court considered

nearly identical claims and dismissed them:[6]

- **First COA**—Unreasonable Searches and Seizures:  Mr. Larson claims Defendants

  violated his rights under the Fourth and Fourteenth Amendments and the Minnesota

  Constitution by subjecting him to unreasonable searches and seizures.  (ECF No. 30 at 43

  ¶ 170.)  Plaintiffs, including Mr. Larson, raised the same claim in *Karsjens*.  *Karsjens* TAC

  ¶¶ 316-325 (Count X) (Unreasonable Searches and Seizures in Violation of the Fourth

  Amendment to the United States Constitution and the Minnesota Constitution).

- **Second COA**—Invasion of Privacy:  Mr. Larson claims Defendants violated his rights

  under the Fourth and Fourteenth Amendments and the Minnesota Constitution by engaging

  in unspecified acts that "constitute unreasonable and gross invasion of [his] privacy."  (ECF

  No. 30 at 43 ¶ 173.)  Plaintiffs, including Mr. Larson, raised the same claim in *Karsjens*.

---

still pending, Mr. Larson's argument fails because a federal district court's judgment is "final until
reversed in an appellate court, or modified or set aside in the court of its rendition."  *Stoll v.
Gottlieb*, 305 U.S. 165, 170 (1938); *see also Procknow v. Curry*, 26 F. Supp. 3d 875, 882 n.10 (D.
Minn. 2014) (pending appeal does not affect the finality of a judgment for collateral estoppel
purposes); *In re Ewing*, 852 F.2d 1057, 1060 (8th Cir. 1988) ("It is well established in the federal
courts that the pendency of an appeal does not diminish the res judicata effect of a judgment
rendered by a federal court").

[6] To the extent Mr. Larson has provided an additional basis for some of these COAs under
state law, "it is clear that [he] has 'merely presented different legal claims which spring from the
same set of facts' as *Karsjens*[,]" rendering the state law basis for these claims precluded.  *Jamison*,
2023 WL 2088302, at *2.

*Karsjens* TAC ¶ 1 (alleging violation of class members' rights to "be free from an invasion of privacy"); ¶ 16.n. (alleging defendants "invaded the privacy of Plaintiffs and Class members in violation of clearly established rights under the Fourth Amendment to the United States Constitution and the Minnesota Constitution").

- **Third COA**—Overly Restrictive Conditions:  Mr. Larson broadly alleges Defendants have taken unspecified actions that "constitute deprivations of plaintiff's liberty, speech and property rights in violation of his rights to due process of law and equal protection of the laws guaranteed under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 2, 5, and 7 of the Minnesota Constitution." (ECF No. 30 at 44 ¶178.)  These claims mirror claims that plaintiffs, including Mr. Larson, raised in *Karsjens*.  *Karsjens* TAC ¶¶ 292-297 (Count VII) (Denial of Right to be Free from Inhumane Treatment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution) (alleging the MSOP's policies and procedures resulted in "punitive and unnecessarily restrictive living conditions at the MSOP"); ¶¶ 298-306 (Count VIII) (Denial of the Right to Religion and Religious Freedom in Violation of the First and Fourteenth Amendments to the United States Constitution (alleging the MSOP's policies and procedures impose unreasonable restrictions on plaintiffs in violation of their constitutional rights); ¶¶ 307-315 (Count IX) (Unreasonable Restriction of Free Speech and Free Association in Violation of the First Amendment to the United States Constitution and the Minnesota Constitution) (similarly alleging the MSOP's policies and procedures imposes unreasonable restrictions on plaintiffs in violation of their constitutional rights).

- **Fourth COA—**Cruel and Unusual Punishment:  Mr. Larson alleges Defendants' unidentified actions violated "his guarantee against cruel and unusual punishment" under the United States and Minnesota constitutions.  (ECF No. 30 at 44 ¶ 182.)  This claim also mirrors claims plaintiffs, including Mr. Larson, raised in *Karsjens*.  *Karsjens* TAC ¶¶ 269-283 (Count V) (Denial of Right to be Free from Punishment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution); and ¶¶ 292-297 (Count VII) (Denial of Right to be Free from Inhumane Treatment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution).

- **Fifth COA—Failure to Provide Adequate Treatment**:  Mr. Larson alleges Defendants failed to provide "the best available and most qualified treatment" in violation of his constitutional rights.  (ECF No. 30 at 45 ¶ 186.)  Plaintiffs, including Mr. Larson, raised the same claim in *Karsjens*.  *Karsjens* TAC ¶¶ 254-261 (Count III) (Failure to Provide Treatment in Violation of the Fourteenth Amendment to the United States Constitution and the Minnesota Constitution).

*See also Jamison*, 2023 WL 2088302, at *2 (dismissing virtually identical claims on the same basis).

Mr. Larson's remaining COAs assert legal theories that the *Karsjens* plaintiffs did not raise explicitly, including his:  Sixth COA (denial of treatment for serious medical need); Seventh COA (negligent retention); Eighth COA (negligent supervision); Ninth COA (outrage); and Tenth COA (supplemental state torts).  Although the legal theories underpinning these COAs differ from those asserted in *Karsjen*s, they are still largely barred by claim preclusion, since "a final judgment on the merits of an action precludes the parties or their privies from relitigating *issues* that *were or could have been raised* in that action."  *Id.* at *2 (dismissing claims with legal theories different

than those asserted in *Karsjens* (quoting *Plough v. W. Des Moines Comm. Sch. Dist.*, 70 F.3d 512, 514 (8th Cir. 1995) (emphasis added)).  The Court notes that Mr. Larson's Amended Complaint does not identify any subset of facts as support for any particular COA.  Instead, it incorporates all of Mr. Larson's broad-based allegations into every one of his COAs, and throughout nearly all of the Amended Complaint, Mr. Larson has "merely presented different legal claims which spring from the same set of facts" as those asserted in *Karsjen*s.  *Id.*  (quoting *Biermann v. United States*, 67 F. Supp. 2d 1057, 1060 (E.D. Mo. 1999)).  Thus, to the extent Mr. Larson's remaining claims arise from the same nucleus of facts as those asserted in *Karsjens*, they are barred under the doctrine of claim preclusion.

That Mr. Larson seeks damages against Defendants in their individual capacities does not alter the Court's conclusion that his claims are barred.  To hold otherwise would permit every *Karsjens* class member to pursue separate individual damages claims based on theories that were already rejected.  Further, whether or not Mr. Larson attempted to opt out of the *Karsjens* lawsuit, he was member of the class and therefore had a full and fair opportunity to litigate his claims or any other potential claims arising out of the same nucleus of facts as those asserted in *Karsjens*.  Finally, when the Court conducted its preservice review of Mr. Larson's Amended Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), it made no determination of whether his claims were precluded, or sufficient in any other way.  The Court merely found that he stated a "colorable basis for relief," explicitly noting that its determination "does not preclude Defendants from raising any argument regarding the adequacy of [Mr. Larson's] pleading." (ECF No. 32 at 1)  Having now reviewed his claims, the Court concludes they are barred for the reasons set forth above.

The only allegations Mr. Larson asserts that arguably fall outside the same nucleus of facts raised in the *Karsjens* litigation are those related to the above-described events in July 2011.  The

18

Court observes that these allegations are specific to Mr. Larson and concludes they are not precluded by *Karsjens*. The Court nevertheless recommends Mr. Larson's claims—to the extent they arise from the July 2011 factual allegations—should be dismissed for the reasons discussed below.

### C.    Insufficient Pleading

The Court recommends the entirety of Mr. Larson's Amended Complaint be dismissed because his kitchen-sink style pleading fails to satisfy the requirements under Rules 8 or 11. *Gurman*, 842 F. Supp. 2d at 1153. Despite naming forty-seven Defendants and an unknown number of John and Jane Does, Mr. Larson makes no effort to tie any particular Defendant to any of his COAs. Rather, he broadly asserts all but his Seventh and Eighth COAs against an undifferentiated subset of twenty-six Defendants. He does not explain what acts any individual Defendant allegedly engaged in or clarify why certain Defendants are not subject to any COA at all. (ECF No. 30 at 43-47 ¶¶ 170, 174, 178, 182, 186, 190, 202, 205). Mr. Larson similarly broadly alleges his Seventh and Eighth COAs against "DHS/MSOP, in their official and/or individual capacities" without naming any specific Defendant or explaining how any Defendant's action or lack of action gives rise to these COAs. (*Id.* at 46 ¶¶ 194, 199.)

In addition, Mr. Larson simply incorporates all of his previous 168 paragraphs into each COA, and states that "[t]he actions of the defendants … as alleged herein" constitute the violation each COA seeks to redress. (ECF No. 30 at 43-47 ¶¶ 170, 174, 178, 182, 186, 190, 202, 205.) It is impossible for the Court to determine from this shotgun pleading approach "which of the allegations it should construe literally, and which it should assume result from sloppy draftsmanship." *White v. Dayton*, 11-cv-03702-NEB-DJF, 2023 WL 21918, at *3 (D. Minn. Jan. 3, 2023) (recommending dismissal of a kitchen-sink style pleading, in part, on this basis).

Defendants rightly assert that because Mr. Larson's Complaint "does not contain 'a short and plain statement of the claim the pleader is entitled to relief,' it fails to put Defendants on fair notice" of what Mr. Larson's claims are and the grounds for each claim. (ECF No. 99 at 10 (citing Fed. R. Civ. P. 8(a)(2)).)  Mr. Larson responds that his pleading style was purposeful "to reduce the length of the already lengthy Amended Complaint" and that by including the words "as alleged herein" within each COA, he has "clearly and unequivocally" indicated that the specific factual allegations supporting each COA are found somewhere in the preceding 168 paragraphs.  (ECF No. 97 at 5.)

In other words, Mr. Larson seeks to impose on Defendants and the Court the burden of sifting through the entirety of these myriad factual allegations and guessing which allegations he alleges support each claim.  But Mr. Larson well knows this pleading tactic is inappropriate.  The Court has advised Mr. Larson of the federal pleading requirements on several occasions.[7]  Moreover, Mr. Larson had sufficient opportunity in this case to prepare an Amended Complaint that might satisfy the federal pleading requirements, but chose not to do to do so.  (*See* ECF No. 29, Oct. 20, 2022 Order providing Mr. Larson until December 2, 2022, to prepare an amended

---

[7] *See, e.g.*, *Larson v. Jesson,* No. 11-2247 (PAM/LIB) (D. Minn. Aug. 25, 2017) (ECF No. 41 at 3) ("By pleading all claims against all defendants, Larson has violated both the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that a pleading must consist only of 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and the requirement of Rule 11(b)(2) that each claim presented by a litigant be warranted under existing law."); *Larson*, 2018 WL 3352926, at *1 ("The Amended Complaint is not a 'short and plain statement' of Larson's claims and is subject to dismissal on that basis alone"); *see also Larson v. Bogenholm*, No. 19-cv-2811 (WMW/DTS), 2020 WL 7364440, at *16 (D. Minn. Sept. 9, 2020) (remarking that "Larson's second complaint is even less specific and more conclusory then the first one with respect to the actual incident at issue" and recommending "that Larson be enjoined from filing any other actions in the District of Minnesota stemming from the 2017 incidents that are the basis of this lawsuit [without prior permission]"); *Larson v. Goodman*, No. 09-CV-3600 (PAM/AJB), 2010 WL4568042, at *10 (D. Minn. Sept. 28, 2010) (observing that Mr. Larson's complaint failed to state a claim but "thoroughly succeed[ed] in its ability to harass Defendants with what are nothing more than frivolous claims").

complaint.)   Mr. Larson's broadly alleged, kitchen-sink style pleading makes it virtually impossible for any Defendant to readily respond to any allegation or for the Court to seriously consider and resolve his claims.   *Gurman*, 842 F. Supp. 2d at 1153.   The Court therefore recommends Mr. Larson's Amended Complaint be dismissed in its entirely for failure to satisfy the requirements of Rules 8 and 11.   *Id.*

### D.    Failure to State a Claim

The Court also recommends Mr. Larson's Amended Complaint be dismissed because he fails to state a claim upon which relief can be granted.   Mr. Larson's individual-capacity claims against Defendants fail, either because he does not plausibly allege personal involvement by Defendants in any alleged unconstitutional conduct, or because the claims are barred under the doctrine of qualified immunity.   In addition, Mr. Larson's his request for injunctive relief is non-specific and unsupported by allegations establishing a likelihood of future injury sufficient to provide grounds for equitable relief, and his COAs are otherwise legally deficient.

### 1.    Individual Capacity Claims

To maintain a section 1983 claim against a defendant in their personal capacity, a plaintiff must plead sufficient facts supporting a finding that each defendant was personally involved in an alleged unconstitutional act.   *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001).   "[I]t is not enough for a plaintiff seeking relief from a defendant in the defendant's individual capacity to allege that his rights were violated; the plaintiff must allege that his rights were *violated by the defendant*."   *Pittman v. Swanson*, No. 11-cv-3658 (PJS/TNL), 2023 WL 2404044, at *2 (D. Minn. Jan. 27, 2023), *report and recommendation adopted*, 2023 WL 2238703 (D. Minn. Feb. 27, 2023) (emphasis in original).   To be afforded the usual presumption of truth at the pleading stage, those allegations must be plausible.   *See Twombly*, 550 at U.S. at 570.

In each of is ten COAs, Mr. Larson incorporates 168 paragraphs of factual allegations and asserts generally that a large group of Defendants was responsible for the alleged violations without attempting to state what conduct, by which specific Defendant, forms the basis for any COA.  That Mr. Larson attempts to assert every COA against dozens of Defendants (known and unknown), in both their individual and official capacities, renders his allegations utterly implausible and therefore does not entitle him to a presumption of truth afforded to factual allegations at the pleading stage.  *See Twombly*, 550 U.S. at 555; *see also, White*, 2023 WL 21918, at *3-4 (dismissing MSOP clients' complaints that asserted "each of their twenty-one causes of action against every single one of the Defendants they name to each lawsuit" as not plausibly alleged); *Larson v. Jesson*, No. 11-2247 (PAM/LIB), 2018 WL 3352926, at *7 (D. Minn. July 9, 2018) (stating that the court would disregard allegations because it "is not plausible that the number of Defendants Larson has named in each incident were in fact involved"); *Gurman v. Metro Hous. Dev. Auth.*, 842 F. Supp. 2d 1151, 1153-54 (D. Minn. 2011) (finding shotgun complaint with claims asserted against "every conceivable defendant" without differentiating each defendant's involvement "almost certainly do[es] not satisfy Rule 11(b)(2)").

Mr. Larson does specifically allege Defendants Hibbard and Christenson's involvement in the alleged assault and restraint incident that took place on July 20, 2011.  The Court notes, however, that Mr. Larson explicitly excludes Defendants Hibbard and Christianson from the long list of defendants named in his COAs.  (*See* ECF No. 30 at 14-15 ¶ 2; *id.* at 43- 47.)  Whatever acts Defendants Hibbard and Christenson participated in thus are not alleged as a basis for any of his claims.

Mr. Larson also ties Defendants Ferrian, Paulson, and Sutton to alleged lack of medical treatment after the incident, (ECF No. 30 at 27-29 ¶¶ 63-81).  He further alleges the involvement

of Defendants Knies, Osborne, Barbo, Kneisel, Johnson, Severson, Rose, Ninneman and Moser in carrying out the MSOP's disciplinary policies following the alleged incident and responding to his various requests and appeals thereafter. (*Id*. at 33-35 ¶¶ 107-121.) While these allegations are specific to individual Defendants, Mr. Larson entirely fails to connect any Defendant's alleged conduct to any of his COAs. Given the vague generalities in which the Amended Complaint is drafted, the Court would have to speculate about which factual allegations purportedly support any particular COA against any given individual Defendant in order to find any such claim supported. As noted previously, a complaint that requires the court and the defendants to engage in such speculation does not meet the pleading requirements of Rules 8 and 11.

Even if the Court were to speculate about Mr. Larson's intent and assign these allegations to one or more of his COAs, these claims also fail because Defendants are entitled to qualified immunity. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

To overcome the defense of qualified immunity a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In determining whether the constitutional right was clearly established at the time of the conduct,

the Court must ask whether the contours of the applicable law were "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violated that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Although often resolved at summary judgment, the application of qualified immunity is appropriate here because, even accepting as true Mr. Larson's allegations regarding the events of July 2011, the Court cannot identify any constitutional or statutory violation. Mr. Larson appears to allege that Defendant Hibbard's use of force when he held Mr. Larson in a "bear hug" to restrain him, and Defendants Hibbard, Christenson, and unknown John and Jane Does' use of force to restrain and handcuff him was excessive. (ECF No. 30 at 28 ¶¶ 65, 69, 72-78.)

Multiple decisions support the application of qualified immunity for this type of force. *See, e.g.*, *Blazek v. City of Iowa City,* 761 F.3d 920, 923 (8th Cir. 2014) (grabbing plaintiff's arm, twisting it, and throwing him to the floor not excessive force); *Wertish v. Krueger*, 433 F.3d 1062, 1066-68 (8th Cir. 2006) (concluding that officer who "forcefully threw" passively resisting plaintiff to the ground, pinned plaintiff down, and put his weight on plaintiff's back before handcuffing him did not use excessive force); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (finding no excessive force when plaintiff was twice pushed into a wall); *Mahamed v. Anderson,* No. 07-cv-4815, 2009 WL 873534, at *3 (D. Minn. Mar. 30, 2009) (Montgomery, J.) (finding no excessive force when officer placed his knee on the handcuffed plaintiff's back); *Larson*, 2018 WL 3352926, at *7 (use of pepper spray, holds, and forceful handcuffing was not excessive).

Mr. Larson's other allegations relate to the adequacy of medical treatment he received (ECF No. 30 at 29 ¶¶ 80-82), and various Defendants purportedly conspiring against him by placing him in HSA, wrongly prolonging his AR status, and filing false criminal charges against

him (*id.* at 30, 34 ¶¶ 85, 87-90, 109, 113).  None of these allegations, even when construed in the light most favorable to Mr. Larson, demonstrate the deprivation of a constitutional or statutory right of which a reasonable person would have known.  *Harlow*, 457 U.S. at 818.  The Court therefore recommends that all of Mr. Larson's individual-capacity claims against Defendants be dismissed because he fails to plead any Defendants' personal involvement in any alleged unconstitutional act and because Defendants are entitled to qualified immunity.

### 2.    Injunctive Relief

Mr. Larson seeks injunctive relief requiring Defendants "to provide all constitutional rights to which Plaintiff is entitled while confined at MSOP."  (ECF No. 30 at 50 ¶ D.)  The Court recommends that his claims for injunctive relief be dismissed for lack of specificity.

Injunctive relief may be ordered only in specific terms and must describe "in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).  "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).  "[A]n injunction which does little or nothing more than order the defendants to obey the law is not specific enough."  *Daniels v. Woodbury Cty., Iowa*, 742 F.2d 1128, 1134 (8th Cir. 1984).  Under this standard, an order requiring Defendants "to provide all constitutional rights" is essentially an order requiring Defendants to obey the law and is impermissible under Rule 65 because it lacks the requisite detail necessary to notify those enjoined of precisely what conduct is outlawed.

Further, in order to obtain prospective injunctive relief, a complaint must plausibly allege a threat of ongoing or future harm.  *See Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("Standing to seek injunctive relief requires a plaintiff … to show a likelihood of

a future injury."). Here, the only events described in any detail took place more than a decade ago, and any prospective relief would not address those alleged wrongs. *See Larson,* 2018 WL 3352926, at \*2 (dismissing claim for prospective relief premised upon "incidents that occurred eight or nine years ago" because "[a]ny prospective relief, even if sufficiently pled, would not remedy the violations he has alleged"). For these reasons, the Court recommends Mr. Larson's claims for prospective injunctive relief be dismissed.

### E.    Causes of Action

The Court additionally recommends Mr. Larson's Amended Complaint be dismissed in its entirely because the COAs he asserts do not state claims for relief sufficient to avoid dismissal under Rule 12(b)(6).

### 1.    First and Second COAs: Unreasonable Searches and Seizures and Invasion of Privacy

In his First and Second COAs, Mr. Larson claims Defendants violated his rights under the Fourth and Fourteenth Amendments and the Minnesota Constitution by subjecting him to unreasonable searches and seizures (First COA) (ECF No. 30 at 43 ¶ 170) and engaging in unspecified acts that constitute unreasonable and gross invasion of his privacy (Second COA) (*id.* at 43 ¶ 173).

"[I]nvoluntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) (citing *Serna v. Goodno*, 567 F.3d 944, 948–49 (8th Cir.2009)). Although Mr. Larson is civilly committed, "his confinement is subject to the same safety and security concerns as that of a prisoner." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). The same analysis applies whether Mr. Larson styles his Fourth Amendment claim as an "unreasonable search" or an "invasion of privacy." *See United States v. Senty-Haugen*, No.

17-CR-182 (JNE/LIB), 2017 WL 6543824, at *8 (D. Minn. Nov. 21, 2017), *report and recommendation adopted*, No. 17-CR-182 (JNE/LIB), 2017 WL 6550674 (D. Minn. Dec. 21, 2017).

Mr. Larson's Amended Complaint lacks any allegations regarding any specific searches or seizures to which he was subjected, which Defendants engaged in such conduct, or any facts to plausibly establish that any specific conduct by any Defendant was unreasonable.  He makes a general allegation regarding the MSOP's policy of "unclothed visual body searches" (*id.* at 20 ¶ 25), but the Eighth Circuit has already concluded that unclothed searches of MSOP clients are reasonable.  *Beaulieu*, 690 F.3d at 1030.  As to his privacy claim, Mr. Larson alleges only that "[a]ll of the defendants, in their official and/or individual capacity, have violated the privacy of plaintiff."  (*Id.* at 42, ¶ 166.)  He fails to allege anything to plausibly establish that any specific conduct by any Defendant was unreasonable.  For these reasons, the Court recommends Mr. Larson's First and Second COA be dismissed for failure state a claim upon which relief can be granted.

### 2.    Third COA: Overly Restrictive Conditions

Mr. Larson's vaguely-stated Third COA alleges violation of his due process rights.  (ECF No. 30 at 44 ¶ 178.)  He appears to challenge the general conditions of his confinement at the MSOP under a substantive due process theory.  But *Karsjens* already decided that the conditions at the MSOP do not violate substantive due process.  *Karsjens III*, at *7.  Mr. Larson identifies no factual allegations to support his claims, much less distinguish how any challenged conditions differs from those already ruled permissible in *Karsjens*.  The Court therefore recommends Mr. Larson's Third COA be dismissed for failure state a claim upon which relief can be granted.

### 3.    Fourth COA: Cruel and Unusual Punishment

In his Fourth COA, Mr. Larson alleges Defendants' unspecified actions violated his right to be free from cruel and unusual punishment.  (ECF No. 30 at 44 ¶ 182.)  But "the Eighth Amendment applies only to persons who are in custody as punishment for a criminal conviction." *Housman v. Jesson*, No. 15-cv-2209 (PAM/HB), 2016 WL 7231600, at *3 (D. Minn. Dec. 14, 2016) (citing *Semler v. Ludeman*, No. 09-cv-732 (ADM/SRN), 2010 WL 145275, at *22 (D. Minn. Jan. 8, 2010)).  Because Mr. Larson is "civilly committed to MSOP and not in custody as punishment for a criminal conviction, the Eighth Amendment does not apply." *Id.*  To the extent Mr. Larson claims the conditions of his confinement constitute punishment in violation of the Fourteenth Amendment, as discussed above, Mr. Larson neither asserts factual allegations to support any constitutional violation related to the conditions of his confinement at the MSOP, nor explains how any challenged conditions differ from those already deemed permissible in *Karsjens.* For these reasons, the Court recommends Mr. Larson's Fourth COA be dismissed for failure to state a claim.

### 4.    Fifth and Sixth COAs: Failure to Provide Adequate Treatment and Denial of Treatment for Serious Medical Need

In his Fifth COA, Mr. Larson alleges Defendants failed to provide "the best available and most qualified treatment" in violation of his constitutional rights and the MCTA.  (ECF No. 30 at 45 ¶ 186.)  He similarly alleges in his Sixth COA that Defendants were deliberately indifferent to his serious medical needs.  (*Id.* at 45 ¶ 190.)  Neither theory is cognizable.

In *Karsjens I*, the Eighth Circuit rejected the theory that there is a "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." 845 F.3d at 410 (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)).  The MCTA also does not support Mr. Larson's treatment claim because it does

not establish a private right of action.  "A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007).  Section 253B.03 sets forth the rights of committed patients but does not explicitly provide a private right of action.  *See generally* Minn. Stat. § 253B.03.  Courts have consistently determined that the neither the MCTA generally, nor section 253B.03, provides an implied right of action. *See Semler v. Ludeman*, No. A08-1477, 2009 WL 2497697, at *3 (Minn. Ct. App. Aug. 18, 2009) (holding that § 253B.03 does not provide a civilly-committed individual with a private cause of action); *Kunshier v. Minnesota Sex Offender Program*, No. A09-0133, 2009 WL 3364217, at *6 (Minn. Ct. App. Oct. 20, 2009) (holding that the MCTA does not provide a private cause of action).

To the extent Mr. Larson's Sixth COA is distinct from his Fifth COA, it likewise fails.  To state a claim for failure to provide medical care, a plaintiff must plead facts to plausibly show defendants were deliberately indifferent to a serious illness or injury.  *See Karsjens*, 2022 WL 542467, at *5 (quoting *Senty-Haugen v. Goodno*, 462 F.3d 876, 889-90 (8th Cir. 2006)).  This standard is higher than gross negligence and requires that defendants knew of excessive risks to the plaintiff's health, yet disregarded them.  *Senty-Haugen*, 462 F.3d at 890.  Mere disagreement with a treatment decision or a delay in treatment does not state such a claim.  *Karsjens*, 2022 WL 542467, at *5 (noting that medical evidence is generally required to establish causation).  Mr. Larson makes no plausible allegation to establish that Defendants knew of any alleged risks to his health but disregarded them in order to cause harm.  Rather, Mr. Larson acknowledges he was examined the same day he was allegedly injured but alleges his injuries were not properly "specified and/or diagnosed."  (ECF No. 30 at 29 ¶¶ 80-82.)  For these reasons, the Court finds

Mr. Larson fails to assert a plausible claim that Defendants ignored risks to his health and recommends his Fifth and Sixth COAs be dismissed for failure to state a claim.

### 5.    Seventh and Eighth COAs: Negligent Retention and Negligent Supervision

In his Seventh and Eighth COAs, Mr. Larson alleges negligent retention (Seventh COA) (*id.* at 4 ¶¶ 193-197) and negligent supervision (Eighth COA) (*id.* at 46 ¶¶ 198-200).  Mr. Larson does not identify any constitutional right underpinning these claims.  And even if the Court were to exercise supplemental jurisdiction, Mr. Larson fails to plead facts sufficient to state either claim under Minnesota law.  Both negligent and hiring and negligent supervision claims must allege physical harm.  *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. Ct. App. 2007).  These claims also require "that the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct." *Id.*  Mr. Larson fails to plead any such allegations.  The Court therefore recommends that his Seventh and Eighth COAs be dismissed for failure to state a claim.

### 6.    Ninth COA: Outrage

In his Ninth COA, Mr. Larson alleges Defendants' unspecified actions "shock the conscience, were intentional and/or reckless, and were beyond the bounds of decency."  (ECF No. 30 at 47 ¶ 202.)  Mr. Larson neither identifies any constitutional right underpinning this claim nor any basis in state law,  and to the extent such a claim exists under Minnesota law, Mr. Larson does not state a cognizable claim for relief.  The Court accordingly recommends Mr. Larson's Ninth COA also be dismissed for failure to state a claim.

### 7.    Tenth COA: Supplemental State Torts

In his Tenth COA, Mr. Larson alleges Defendants committed various state torts.  Because the Court recommends Mr. Larson's federal claims be dismissed in their entirety, it further

recommends that the exercise of supplemental jurisdiction over Mr. Larson's state law claims be denied, to the extent any such claims might otherwise survive.  28 U.S.C. § 1367.

Mr. Larson does not meaningfully respond to any argument that his claims are legally deficient.  Rather, he contends that because the Court granted his application to proceed *in forma pauperis* (IFP Application), the Court, already determined that his allegations were plausible, well-pleaded, and could survive a motion to dismiss.  (ECF No. 97 at 4, 6.)  But the Court made no such determination when its granted Mr. Larson's IFP Application.  Rather, the Court clearly stated, "[t]he fact that the Court grants Mr. Larson's IFP Application does not preclude Defendants from raising any argument regarding the adequacy of his pleading."  (ECF No. 32 at 1.)  Having now considered such arguments, the Court concludes Mr. Larson's claims fail for the reasons set forth above.  Because all of Mr. Larson's claims are precluded by *Karsjens*, fail to meet basic pleading requirements, or are legally deficient, the Court recommends that this action be dismissed with prejudice in its entirety.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Defendants' Motion to Dismiss (ECF No. [91]) be **GRANTED**;

2.    Plaintiff Hollis J. Larson's self-styled motion (ECF No. [97]) be **DENIED** as **MOOT;** and

3.    This matter be **DISMISSED WITH PREJUDICE**:


Dated:   August 3, 2023                         *s/ Dulce J. Foster*
                                                DULCE J. FOSTER
                                                United States Magistrate Judge

31

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).