**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

HOLLIS J. LARSON,

                    Plaintiff,

v.

THE MINNESOTA SEX OFFENDER
PROGRAM (MSOP), et al.,

                    Defendants.

Civil No. 13-1074 (JRT/DJF)

**ORDER ADOPTING REPORT AND
RECOMMENDATION**

---

Hollis J. Larson, MSOP, 1111 Highway 73, Moose Lake, MN 55767, *pro se*
Plaintiff.

Benjamin C. Johnson, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445
Minnesota Street, Suite 1400, St. Paul, MN 55401, for Defendants.

Plaintiff Hollis J. Larson is civilly committed to the Minnesota Sex Offender Program ("MSOP"). He filed a complaint against 47 named defendants and an "unknown number of John and Jane Does" (collectively "MSOP") challenging his treatment and the conditions at MSOP. Larson alleges constitutional violations and state law tort claims under 42 U.S.C. § 1983 and the United States Constitution. MSOP moved to dismiss the complaint and Magistrate Judge Dulce J. Foster recommended that MSOP's motion be granted. Larson objected to the Report and Recommendation ("R&R"). After review, the Court will adopt Magistrate Judge Foster's R&R and dismiss Larson's complaint with prejudice.

## BACKGROUND

### I.    FACTS

Plaintiff Hollis J. Larson is civilly committed to the Minnesota Sex Offender Program ("MSOP") and residing at MSOP's facility in Moose Lake, Minnesota.  (Am. Compl. at 3 ¶ A, Nov. 10, 2022, Docket No. 30.)   Over the past decade, Larson has alleged various constitutional rights violations and mistreatment under 42 U.S.C. § 1983 while he has been committed at the MSOP facility.  (*See* Compl., May 6, 2013, Docket No. 1.)

Broadly, Larson alleges violations under the Eighth Amendment, Fourth Amendment, Fourteenth Amendment, state tort law, and other claims unsupported by legal citation.  (*See generally* Am. Compl.)  He claims that MSOP violated the Eighth Amendment by subjecting him to routine punishment which he states was caused or influenced by his mental illness.  (*Id.* at 25, 28 ¶¶ 52, 68.)  He asserts that MSOP's "unclothed visual body searches" violated his Fourth Amendment rights against unreasonable searches and seizures.  (*Id.* at 20 ¶ 25.)  In addition, Larson cites infliction of punishment without due process, inhumane treatment, cruel and unusual punishment, and other allegations as violations of the Fourteenth Amendment.  (*Id.* at 40, 42, 44 ¶¶ 151, 162–64, 182.)

Specifically, Larson alleges that there is a "plan, program, practice, and policy whereby MSOP detainees … who protest … or who do not 'participate' in 'treatment'" are subjected to disciplinary actions.  (*Id.* at 14–15 ¶ 2.)  These allegations span 168 paragraphs of Larson's complaint and result in ten causes of action against 47 named

defendants and other unknown "John and Jane Doe's" in both their individual and official capacities.  (*Id.* at 1.)

While the majority of Larson's complaint constitutes general, system wide grievances, he alleges one specific incident of misconduct perpetuated by Defendants Jon Hibbard and Joanne Christenson.  (*Id.* at 27–29 ¶¶ 62–79.)  The incident began with Larson's attempt to voluntarily enter the High Security Area ("HSA")–a punitive segregation unit at MSOP on July 20, 2011.  (*Id.*)  He describes his behavior as an attempt to "isolate himself from the constant torture that is MSOP's only 'treatment.'"  (*Id.* at 27 ¶ 62.)  In his attempt to enter the HSA, Larson claims that Hibbard and Christenson confronted him and, "[w]ithout need, provocation, or justification" Hibbard assaulted Larson by putting him in a "bear hug," throwing him to the floor, and landing on top of him.  (*Id.* at 27–28 ¶¶ 63, 65.)

During this incident, Larson tried to free himself by "thrashing around," during which his head "*may* have inadvertently come into contact with [D]efendant Hibbard's head."  (*Id.* at 28 ¶¶ 70–71 (emphasis in original).)  Larson claims that he was held down and handcuffed by Hibbard, Christenson, and others, which resulted in "large and severe abrasions … and possibly cracked ribs."  (*Id.* at ¶¶ 72–73.)  Further, Larson accuses Hibbard of "stomping down" on the back of his left ankle while he was already "immobilized and 'under control,'" and accuses Christenson of "mounting" his face, which made it difficult for Larson to breathe.  (*Id.* at 29 ¶¶ 75–77.)

Later that day, a licensed practical nurse, evaluated and documented Larson's injuries. (*Id.* at 13, 29 ¶¶ 42, 80.)  Larson both claims no further treatment and a seven-day delay in treatment of his open wounds.  (*Id.* at 29 ¶¶ 80–81.)  Finally, he asserts that his injuries were improperly diagnosed because he did not receive a "complete examination by a doctor" which caused over four weeks of continuous pain and trauma. (*Id.* at 30 ¶¶ 83–84.)

Larson claims that as a result of this altercation, he was kept in HSA and then placed on Administrative Restriction ("AR") and transferred to Unit Omega, the "Behavioral Therapy Unit."  (*Id.* at 30, 32–33 ¶¶ 86, 103, 107.)  The explanation given for his AR placement was for an alleged assault on Hibbard and for the "safety and security of the facility" which would expire upon the completion of an investigation of the incident.  (*Id.* at 33 ¶¶ 107–08.)  Larson filed various requests for review of his AR designation, none of which were successful until the investigation was complete after approximately two months.  (*Id.* at 34–37 ¶¶ 115, 119, 127, 131, 135.)

## II.   PROCEDURAL HISTORY

Larson originally filed his complaint against the MSOP on May 6, 2013, alleging various forms of mistreatment and civil rights violations.  (*See generally* Compl.)  The case was stayed pending the disposition of *Karsjens et al. v. Minnesota Department of Human Services, et al.*, No. 11-3659 ("*Karsjens*") because Larson was a member of the class represented in that case.  After the resolution in *Karsjens,* and in anticipation of the stay being lifted, Larson expressed his intent to prosecute his claims further.  (Order, June 29,

2022, Docket No. 18; Notice of Intent to Prosecute, July 13, 2022, Docket No. 19.)  He concurrently filed a motion to appoint counsel.  (Mot. to Appoint Counsel, July 13, 2022, Docket No. 20.)  After the stay was lifted on October 3, 2022, Larson filed an amended complaint on November 10, 2022.  (Order Lifting Stay, Oct. 3, 2022, Docket No. 24; Am. Compl.)

Magistrate Judge Dulce J. Foster issued an order denying Larson's motion to appoint counsel.  (Order Granting IFP and Den. Mot. to Appoint Counsel ("IFP Order") at 4, Dec. 1, 2022, Docket No. 32.)  Larson appealed the denial to appoint counsel to the Court.  (Appeal Order Den. Mot. to Appoint Counsel, Jan. 30, 2023, Docket No. 74.)  Because the Court found that the Magistrate Judge did not clearly err in denying Larson's motion to appoint counsel, the order was affirmed.  (Order Affirming Order Den. Counsel, May 16, 2023, Docket No. 100.)

Defendants moved to dismiss the Complaint with prejudice for claim preclusion, insufficient pleadings, failure to state a claim upon which relief may be granted, and qualified immunity.  (Defs.' Mem. in Supp. of Mot. to Dismiss, Apr. 11, 2023, Docket No. 93.)  Magistrate Judge Foster issued an R&R finding that Larson's amended complaint (1) did not plausibly allege violations of his constitutional rights; (2) alleges claims barred under the doctrine of qualified immunity, and (3) pleads claims that are legally deficient. (R. & R. at 18, 21, 31, Aug. 3, 2023, Docket No. 117.)  Larson filed an objection to the R&R

on August 17, 2023.[1]  (Pl.'s Obj. to R. & R., Aug. 17, 2023, Docket No. 118.)  MSOP filed a

response to Larson's objection on August 21, 2023.  (Defs.' Resp. to Pl.'s Obj., Aug. 21,

2023, Docket No. 120.)

**DISCUSSION**

## I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections

to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "The objections

should specify the portions of the magistrate judge's report and recommendation to

which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*,

No. 07–1958, 2008 WL 4527774 at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions,

the Court reviews de novo a "properly objected to" portion of an R&R.  Fed. R. Civ. P.

72(b)(3).  When reviewing a properly objected to portion of an R&R, the Court will review

the case from the start, as if it is the first court to review and weigh in on the issues.  *See*

*Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is

compelled, no form of appellate deference is acceptable.").  "Objections which are not

specific but merely repeat arguments presented to and considered by a magistrate judge

---

[1] With his objection to the R&R, Larson asks the Court to file a motion objecting to the
referral to the Magistrate Judge in a different case, Case No. 23-cv-1823.  (Pl.'s Obj. R. & R., Aug.
17, 2023, Docket No. 118.)  As that motion is not properly filed under this case, and an objection
to the referral to a Magistrate Judge in this case has previously been addressed, the Court will
not address that motion.

are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. Mar. 30, 2015).

A document filed by a pro se litigant is to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Eighth Circuit has been willing to liberally construe otherwise general pro se objections to R&Rs and to require de novo review of all alleged errors.  *See Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).  However, "pro se litigants are not excused from failing to comply with substantive or procedural law."  *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

## II.    ANALYSIS

Although Larson's pro se status and the dispositive nature of the motion to dismiss favor de novo review, the Court will review each of the Magistrate Judge's orders and recommendations for clear error because the Court finds that Larson has not "properly" objected to the R&R.  *See* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition [of a dispositive motion] that has been properly objected to.").  It is well established that objections which are not specific, or which merely repeat arguments presented to a Magistrate Judge, are not entitled to de novo review.  *See, e.g., Martinez v. Astrue*, No. 10–5863, 2011 WL 4974445, at *3 (E. D. Pa. Oct. 19, 2011) (collecting cases).

While Larson challenges all the findings of the Magistrate Judge, he does so by using substantially the same language as in his memorandum in opposition to the MSOP's

motion to dismiss; he does not raise new arguments or challenge specific portions of the R&R. (*See* Pl.'s Obj.)  For example, Larson again asserts that he should have been appointed counsel.[2] (*Id.* at 5–6.)

After reviewing all the information, the Court does not find clear error by the Magistrate Judge.  Thus, the Court will adopt the R&R and dismiss Larson's complaint with prejudice.

Even though the Court finds no clear error by the Magistrate Judge, in the interest of clarity and thoroughness, it will address why the objections should be denied even under de novo review.  Larson's objections can be grouped into three general categories. The objections include: (1) the court found a meritorious claim when granting his in forma pauperis ("IFP") application, (2) his individual claims are not barred by claim preclusion, and (3) the events of July 20, 2011 create a distinct cause of action.  Each objection will be evaluated individually.

### A.     IFP Status Granted Under 28 U.S.C. § 1915(e)(2)(B)

Larson argues that in granting his IFP application, the court necessarily found his claim to have merit.  (Mot. for Leave to Proceed In Forma Pauperis, May 6, 2013, Docket No. 2; Pl.'s Obj. at 1–2.)  In evaluating his IFP application, the Magistrate Judge found

---

[2] Larson filed a motion to appoint counsel which was denied by the Magistrate Judge and affirmed by this Court.  (Order Granting IFP and Denying Counsel, Dec. 1, 2022, Docket No. 32; Order Affirming Order Denying Counsel, May 16, 2023, Docket No. 100.)  As this issue has already been decided by the Court, it will not be evaluated on Larson's objection to the R&R.

Larson had a "colorable claim for relief" that allowed him to proceed IFP.  (R. & R. at 18.)  Larson claims that a failure to dismiss at this stage resulted in a stipulation that the claim had merit; otherwise, he argues that dismissal was mandatory.  (Pl.'s Obj. at 1–2.)

However, even when a plaintiff qualifies for IFP status, "the court shall dismiss the case at any time if the court determines that the action [] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  In other words, the Court may dismiss a complaint that fails to state a claim on which relief may be granted at "**at any time**."  *Id.* (emphasis added).  A court may grant IFP status and then later find that the action should be dismissed.  *Bishop v. Nystrom*, Case No. 18-2858, 2018 WL 6718577, at *1 (D. Minn. Nov. 5, 2018) (granting an application to proceed IFP in a previous order before recommending dismissal for failure to state a claim).  Moreover, the Magistrate Judge specifically indicated in the order granting IFP status that the order did not render the complaint immune to challenge by the defendants on the sufficiency of its pleadings.  (IFP Order at 1.)  Therefore, the fact that Larson was granted IFP status does not mean that his pleadings would not be later scrutinized on sufficiency grounds.

### B.    Claim Preclusion

Larson challenges the application of claim preclusion based on two grounds: that he seeks individual damages as opposed to declaratory and injunctive relief, and that he was harmed in a different way than the other class members.  (Pl.'s Obj. at 3–4.)  Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in

that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  The elements of claim preclusion are that: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."  *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (citation omitted).

First, as the Magistrate Judge properly noted, it is undisputed that the *Karsjens* lawsuit resulted in a final judgment, which has now been affirmed by the Eighth Circuit. *See Karsjens v. Harpstead*, 74 F.4th 561 (8th Cir. 2023).  Second, there is no dispute that the *Karsjens* court exercised proper jurisdiction.  *Id.* at 565.  Third, there is also no dispute that the parties in this lawsuit were parties or in privity with the parties in the *Karsjens* litigation.  (*See* R. & R. at 15.)  Finally, this action and *Karsjens* are based on the same claims because they arise out of the same set of facts.  "[W]hether two claims are the same for [claim preclusion] purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate."  *Murphy v. Jones*, 877 F.2d 682, 684–85 (8th Cir. 1989).  Therefore, all four elements of claim preclusion are met, and Larson is bound by the outcome in *Karsjens*.  As a result, Larson's claims that challenge the constitutionality of the MSOP practices must fail as they were upheld in *Karsjens,* and his claims arising out of the same set of facts and circumstances must fail as they should have been raised in *Karsjens*.

Larson maintains that because he is seeking individual damages, and not declaratory and injunctive relief like the *Karsjens* class, his claim is not barred by claim preclusion.  While Larson cites authority which suggests individual damages claims may survive class claim resolution, that is only true if the individual claims are distinct.  *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 880, 868 (1984).  In *Cooper*, the Supreme Court held that a class judgment precludes individual class members from relitigating the question of an overarching unlawful practice or policy but does not preclude individualized claims regarding specific instances of unlawful conduct.  *Id.* at 880.  Most of Larson's claims are broad policy-based arguments that *Karsjens* resolved.  Thus, he cannot seek individual damages on those claims.

Notably, Larson does allege specific and individualized conduct on July 20, 2011 which falls outside the scope of the *Karsjens* common nucleus of facts.  Because these allegations involve a specific incident, not a general challenge to the MSOP as addressed in *Karsjens*, they are not barred by claim preclusion.  However, surviving claim preclusion does not mean those allegations amount to a cognizable legal claim.

### C.    Incident on July 20, 2011

Larson also objects to the Magistrate Judge's finding that his amended complaint does not properly plead legal claims.  (Pl.'s Obj. at 2.)  He argues that he properly alleges specific conduct by specific defendants.  While separate from the *Karsjens* litigation and not barred by claim preclusion, these allegations are still subject to court scrutiny.  Because the Court finds that Larson's claims surrounding the July 20, 2011 incident fail to

meet the pleading standards under Federal Rule of Civil Procedure 8(a)(2) and 12(b)(6)

and the named Defendants are protected by qualified immunity, dismissal is appropriate.

    1.  Rule 8(a)(2)

Federal Rule of Civil Procedure 8(a)(2) requires that plaintiffs plead "a short and

plain statement of the claim showing that [they are] entitled to relief.  Fed. R. Civ. P.

8(a)(2).  The Supreme Court has said that Rule 8(a)(2)'s plain statement requirement is

designed to "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  Defendants cannot have proper notice where "a plaintiff files a 'kitchen

sink' or 'shotgun' complaint asserting every conceivable claim against every conceivable

defendant."  *City of Wyoming v. Procter & Gamble Co*., 210 F. Supp. 3d 1137, 1153 (D.

Minn. 2016) (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831–32, 839–

40 (D. Minn. 2012)).  In *Tatone*, Judge Davis found that "[a] complaint which lumps all

defendants together and does not sufficiently allege who did what to whom, fails to state

a claim for relief because it does not provide fair notice of the grounds for the claims

made against a particular defendant." *Id.* at 831.

Larson's amended complaint does not conform to this standard and does not put

defendants on notice.  The amended complaint consists of 168 paragraphs of factual

allegations and ten causes of actions.  (*See generally* Am. Compl.)  Allegedlly, all 168

paragraphs relate to each cause of action and each Defendant is responsible for each

cause of action.  (*Id.*)  However, the defendants named on the complaint do not match those named in the causes of action, which reduces the number of defendants from 47 to 26.  (*Id.* at 14–15 ¶ 2.)  Theoretically, the missing 11 defendants from the body of the complaint are not alleged to have committed any of the actions in the complaint, yet they are still named as defendants in this case.  (*Id.* at 1.)  Further, each cause of action is against named Defendants and other unnamed "John and Jane Doe's."  (*Id.* at 14–15 ¶ 2.)  While the allegations arising from July 20, 2011 name specific Defendants, neither the specific conduct from that date nor the named Defendants are linked to a specific cause of action.  (*Id.* at 27–29 ¶¶ 62–79.)  This deficiency fails to put Defendants, even those specifically named in the July 20, 2011 incident, on notice as to the claims.

　　2.  Rule 12(b)(6)

　　Even if Larson's complaint had put all the Defendants on notice, the Complaint still must plead a claim upon which relief can be granted.  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

　　 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most

favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of a cause of action's elements" to meet the plausibility standard. *Twombly*, 550 U.S. at 545.

Larson correctly notes that pro se pleadings are to be construed liberally. *Erickson*, 551 U.S. at 94.  However, the Court will not insert additional facts that strengthen a claim or "construct a legal theory for [a] plaintiff that assumes facts that have not been pleaded." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  While Larson makes specific allegations against specific Defendants, he fails to identify specific causes of action that these fall under.  In the interest of liberally construing Larson's pro se complaint, the Court will evaluate the plausibility of the factual allegations of July 20, 2011 under two possible claims: excessive force and adequacy of medical care.

A.  Excessive Force

When a person is involuntarily committed, excessive force against that person is prohibited under the Fifth and Fourteenth Amendments. *Andrews v. Neer*, 253 F.3d 1052,

1062 (8th Cir. 2001); *Kingsley v. Hendrickson*, 576 U.S. 389, 404 (2015) (Scalia, J. dissenting).[3]  Excessive force claims by persons who are civilly committed are evaluated with the same standard as excessive force claims by pretrial detainees. *Andrews*, 253 F.3d at 1061.  For a pretrial detainee to sustain a claim for excessive force, the Supreme Court has held that the use of force must be both deliberate and objectively unreasonable. *Kingsley*, 576 U.S. at 396–97 (2015).  The objective analysis is based on the perspective of a "reasonable officer on the scene" at the time of the incident.  *Id.* at 397.

When Hibbard and Christenson initiated contact with Larson, he was trying to enter the High Security Area ("HSA") of the MSOP facility.  (Am. Compl. at 27 ¶¶ 62–63.) Hibbard then proceeded to place Larson in a "bear hug" and throw him to the floor.  (*Id.* at 28 ¶ 65.)  Larson asserts this "attack" was unprovoked and unjustified resulting in severe abrasions, possibly cracked ribs, and "pain and damage" to Larson's left ankle from Hibbard "stomping down on the back of [his] left lower leg."  (*Id.* at 28–29 ¶¶ 65, 73, 75.) He further alleges that he was unable to breathe because Christenson restrained him by "mounting" his face and placing him in handcuffs while already immobilized constituting excessive restraint.  (*Id.* at 29 ¶¶ 77–79.)  Finally, Larson claims that his injuries were not properly diagnosed or treated; he was examined by a licensed practical nurse the day of the incident, but no other treatment was provided.  (*Id.* at 29 ¶¶ 80, 82.)

---

[3] Larson alleges cruel and unusual punishment, but because he is civilly committed and not a convicted prisoner, the Eighth Amendment prohibition on cruel and unusual punishment is not applicable. *Kingsley v. Hendrickson*, 576 U.S. 389, 390 (2015).

Taking the facts as true and in the light most favorable to Larson, the Court finds that he did not sufficiently plead Hibbard and Christenson's deliberative conduct was an objectively unreasonable use of force.  The Eighth Circuit has held that placing someone in a bear hug, throwing them to the ground, and handcuffing them while walking away from officers did not constitute excessive force even though it resulted in momentary loss of consciousness and a fractured collarbone.  *Kelsay v. Ernst*, 933 F.3d 975, 978–79, 980–81 (8th Cir. 2019).  In *Kelsay*, the Eighth Circuit held that the takedown did not clearly constitute excessive force because a reasonable officer could find it necessary to execute a take down to control the situation and prevent an escalation of confrontation even if a jury could find that the subject presented no risk.  *Id.* at 981 (describing Kelsay's behavior as only ignoring commands and walking away).

Larson's situation is substantially similar to that presented in *Kelsay* in that he continued to walk towards HSA after being confronted by Hibbard and Christenson, which led to Hibbard's "bear hug" take down. (Am. Compl. at 27 ¶¶ 63–64.)  However, Larson's situation differs in two significant ways.  Larson attempted to enter a secured area of the MSOP facility, and thrashed around during the altercation, ultimately striking Hibbard's head with his own. (*Id.* at 28 ¶¶ 70–71.)  The holding in *Kelsay* coupled with the heightened circumstances of Larson's flailing around while trying to enter a secured area establishes that Hibbard and Christenson's conduct was not objectively unreasonable at the time they acted.

B.   Adequacy of Medical Care

Inadequate medical care can violate substantive due process under the Fourteenth Amendment.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 889 (8th Cir. 2006).  A violation is evaluated under the same standard established under the Eighth Amendment: "deliberate indifference" to a "serious illness or injury."  *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).  Deliberate indifference is a higher standard than gross negligence and the plaintiff must show that a known excessive risk to health was disregarded.  *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).  To meet the deliberate indifference standard, a plaintiff must show a "mental state akin to criminal recklessness."  *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (citing *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2008)).  Dissatisfaction with medical treatment and negligent misdiagnosis do not rise to the level of deliberate indifference.  *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993); *Allard*, 779 F.3d at 772.

Larson suggests that his injuries were improperly treated after the July 20, 2011 altercation resulting in over four weeks of chest pain and numbness as well as scarring.  (Am. Compl. at 29–30 ¶¶ 82–84.)  However, he was examined that same day, and although no additional treatment was given, it is not clear from the facts as pleaded that Larson's injuries worsened as a result of "deliberate indifference."  (*Id.* at 29 ¶ 80.)  There is nothing to suggest that because he did not see a doctor as he requested or that MSOP or the licensed practical nurse had the "mental state akin to criminal recklessness."  (*Id.*

at 29 ¶ 82.); *Allard*, 779 F.3d at 772.  Larson's same day evaluation indicates an attempt to treat and manage any injuries sustained.  Nothing presented by Larson leads the Court to believe there is a plausible substantive due process claim for inadequate medical care under the Fourteenth Amendment.

3.  Qualified Immunity

While the factual allegations arising from July 20, 2011 do not meet the pleading standard under Rule 8(a)(2) and fail to state a claim upon which relief can be granted under Rule 12(b)(6), the allegations fail for a third reason.  Hibbard and Christenson are protected by qualified immunity.  "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" and is a question of law for the Court to decide.  *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

The qualified immunity analysis involves two questions: (1) whether the facts, as alleged by the plaintiff, establish a violation of a constitutional right, and (2) whether the constitutional right was clearly established at the time the defendant allegedly violated the right.  *Pearson v. Callahan,* 555 U.S. 223, 232 (2009); *Burke v. Sullivan,* 677 F.3d 367, 371 (8th Cir. 2012).

The clearly established prong of the qualified immunity analysis requires the Court to evaluate whether the constitutional rights at issue are clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful in the situation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("in the light of preexisting law the unlawfulness must be apparent"); *White*, 580 U.S. at 79 (noting that "existing precedent must have placed the statutory or constitutional question beyond debate" in order to conclude that a right has been clearly established). While the clearly established standard is admittedly stringent and the clearly established law must be "particularized to the facts of the case," the Court need not locate a case directly on point in order to conclude that the statutory or constitutional question is beyond debate. *White*, 580 U.S. at 79.

Larson's complaint falls short on both prongs. First, he alleges no constitutional or statutory violation relating to the events of July 20, 2011. He claims mistreatment and injury but fails to tie those claims to any specific cause of action. The only claims that the Court can surmise are excessive force and inadequate medical care. As discussed above, Larson did not plead sufficient facts to suggest that the force used by Hibbard and Christenson was objectively unreasonable. Nor did he plead sufficient facts to suggest that anyone operated with deliberate indifference to a known injury when they treated Larson. Instead, Larson relies on conclusory statements that the conduct on July 20, 2011

was "deliberate[], sadistic[], and malicious[]" and that it was "unnecessary and illegal."

(Am. Compl. at 29 ¶¶ 75, 77, 79.)

Second, even if Larson could substantiate a constitutional violation, it is not one

that was clearly established at the time of the incident.  There are no facts suggesting that

the force used by the officers was established as excessive.  In fact, the Magistrate Judge

presented several examples of similar force that was found to not be excessive while

Larson presents no support for his claim of excessive force.  (R. & R. at 24.)  There are also

no facts suggesting that a same day evaluation of injuries from an altercation without

further treatment is a known violation of substantive due process.  Because neither of the

potential claims relating to July 20, 2011 are sufficient to find a violation of an established

constitutional right and no allegations suggest that this conduct was known to be unlawful

at the time discretion was exercised, qualified immunity applies.  As such, the claim

cannot proceed against Hibbard and Christenson because it fails to meet the pleading

standards under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) and because

qualified immunity shields these Defendants from liability.

## CONCLUSION

Larson's complaint encompasses challenges to the MSOP program overall and the

details of one specific incident.  All of the general allegations must be dismissed because

they are precluded by the *Karsjens* litigation.  Further, the specific allegations of July 20,

2011 fail to meet the pleading standard, fail to state a claim upon which relief can be

granted, and the named Defendants are protected under qualified immunity.  As such,

the Court will adopt the Report & Recommendation.  Thus, Larson's objection will be overruled, and Larson's complaint will be dismissed with prejudice.[4]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Magistrate Judge's Report and Recommendation [Docket No. 117] is **ADOPTED**;

2. Plaintiff's objection [Docket No. 118] to the Report and Recommendation is **OVERRULED**;

3. Defendants' Motion to Dismiss [Docket No. 91] is **GRANTED.**

4. Plaintiff's Motion for Continuance and for Default Judgment [Docket No. 97] is **DENIED as moot**.

5. Plaintiff's Amended Complaint [Docket No. 30] is **DISMISSED with prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  February 6, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

---

[4] Alternatively, Larson asks the Court to dismiss his complaint without prejudice. However, after going through the analysis of the possible claims, the Court does not find that Larson's complaint could be cured even with a chance to amend.  *Perez v. Bank of Am., N.A.*, No. 13-2437, 2014 WL 2611838, at *11 n. 6 (D. Minn. June 10, 2014) (collecting cases).